UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALICIA RAY,                                         Case No.:

                Plaintiff,

    -against-                                    **COMPLAINT**

FRESHLY, INC.,                                      Plaintiff Demands a
                                                    Trial by Jury
                Defendant.
------------------------------------------------------------------X

Plaintiff, Alicia Ray, by and through her attorneys, Arcé Law Group, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. §1981, the New York State Executive Law, and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her race, together with creating a hostile work environment, retaliation, and unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §1981; 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. §1391(b).

5. On or about May 11, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about April 9, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is being brought within the ninety (90) day statutory time period.

8. The Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

## PARTIES

9. Plaintiff is an African American female resident of the State of New Jersey, County of Hudson.

10. At all times material, Defendant FRESHLY INC. (hereinafter "FRESHLY") was and is a general domestic business corporation duly existing under the laws of the State of Delaware.

11. At all times material, Defendant FRESHLY operated a meal subscription service business, and was headquartered at 115 East 23rd Street, 8th Floor, New York, NY 10010.

12. At all times material, Plaintiff was an employee of Defendant FRESHLY.

## MATERIAL FACTS

10. On or about April 1, 2019, Plaintiff began working for Defendant FRESHLY as a "Senior Search Manager" with an annual salary of $105,000. In addition to base salary and fringe benefits, Plaintiff was provided with 1,000 incentive-based, pre-IPO stock options.

2

11. In her role, Plaintiff oversaw and guided Defendant FRESHLY's paid marketing and search strategy, performed daily campaign optimizations, competitive analysis and market research, and daily, weekly, and monthly campaign analytics, performance and reporting.

12. Throughout 2019, Plaintiff thrived in her role, receiving a positive review in the middle of 2019 from "Director of Growth," Justin Lee (her then direct supervisor). Mr. Lee had also recommended her for a merit increase in salary at the end of 2019.

13. However, in or around February 2020, Mr. Lee left the company.

14. Concerned that she had not yet received an end-of-the-year performance review prior to Mr. Lee's departure, Plaintiff repeatedly asked Neal Champion, her interim supervisor and the new "Director of Growth," about her performance review. Mr. Champion told her that the issue was moot, and that he believed that none of the members on her team had received end-of-the-year performance reviews.

15. However, shortly after Mr. Champion took over direct supervision of Plaintiff's team, almost everyone on Plaintiff's team, except Plaintiff, received promotions. **None of the other employees were African American.**

16. Between January 2020 and March 2020, on numerous occasions, Plaintiff told "Assistant Director of Human Resources ("HR"), Kat Rojas, that she perceived the promotions of all of her non-Black peers as racially motivated, disparate treatment. Plaintiff also specifically stated that she felt that she was passed over for a promotion because she was African American.

17. Notably, Ms. Rojas repeatedly admitted that there was a "lack of diversity at the company," and that the minorities employed there have had to work harder to "get ahead."

18. In or around April 2020, Defendant FRESHLY hired a new "Vice-President of Growth," Adam Gassman, who became Plaintiff's direct supervisor.

19. Plaintiff immediately noticed that Mr. Gassman treated her differently from the remainder of the team. Notably, she felt that while other team members were allowed more significant leeway with the manner in which they managed their advertising channels, Mr. Gassman singled out her channels, and focused on prioritizing the smaller, less significant channels, in order to sabotage her overall productivity vis-à-vis the larger channels. Plaintiff perceived this disparate treatment as racially discriminatory.

20. On or about May 15, 2020, Plaintiff again spoke with Ms. Rojas, this time to discuss her difficulties working with Mr. Gassman. Ms. Rojas, at that time, requested that Plaintiff give Mr. Gassman two weeks "to settle into his new position" and revisit the situation at that time.

21. Between May 15, 2020 and May 26, 2020, Plaintiff kept records of her interactions with Mr. Gassman. In that time, she noticed a continuation of Mr. Gassman's pattern of singling her out. Again, Plaintiff believed that it was due to race.

22. Thus, on or about May 26, 2020, Plaintiff emailed Ms. Rojas to express that Mr. Gassman's behavior continued, and that while she had been making efforts to work with him, he had repeatedly ignored her e-mails and instead focused on minutiae while refusing to define clear and measurable goals. Plaintiff further stated that she "**would not be subjected to bullying nor discrimination of any kind**," referencing her numerous prior conversations with Ms. Rojas concerning the racially motivated disparate treatment at the workplace.

23. While Plaintiff did not receive an immediate response to her complaint from Ms. Rojas, Mr. Gassman quoted portions of Plaintiff's written complaint in casual conversation, on the same

4

date that the email to Ms. Rojas was sent. Moreover, Mr. Gassman began emphasizing that **"[he] treat[s] everyone the same."**

24. Mr. Gassman's actions were intended to show his ability to control and influence the situation.

25. Mr. Gassman's actions were intended to intimidate Plaintiff, or to dissuade Plaintiff from complaining further.

26. Mr. Gassman's actions were intended to interfere with Plaintiff's protected rights.

27. On or about May 27, 2020, Plaintiff sent a follow-up e-mail to Ms. Rojas, noting that Mr. Gassman was quoting portions of her May 26, 2020 e-mail, and once again, received no immediate response.

28. Then, on or around June 1, 2020, Ms. Rojas e-mailed Plaintiff and scheduled a follow-up call to discuss her complaint. In that call, Ms. Rojas told Plaintiff that Plaintiff and Mr. Gassman just "need to work better together" and that HR would coach the relationship. Ms. Rojas then did nothing to address Plaintiff's complaints of discrimination.

29. The next month, Mr. Gassman began to retaliate against Plaintiff for complaining about race discrimination.

30. For example, Mr. Gassman started to set unattainable performance targets with a specific focus on Plaintiff's channels. These targets were set during an economic recession and during the first peak of the COVID-19 pandemic.

31. Then, on or about July 22, 2020, Mr. Gassman submitted Plaintiff's "mid-year" review for 2020, despite only supervising Plaintiff for a fraction of that time period. Therein, Mr. Gassman noted that one area in which Plaintiff needed improvement is "respect with managers."

32. In further retaliation, Mr. Gassman also denied a merit raise for Plaintiff, citing, in addition to other factors, the above-referenced performance targets as justification for refusing the raises, while failing to account for the promotions given to the other members of Plaintiff's team earlier in the year. Mr. Gassman also indicated that going forward, he would hold monthly performance reviews with Plaintiff.

33. On or about August 6, 2020, concerned about being denied a merit-based raise, Plaintiff text messaged her prior supervisor, Mr. Lee, to confirm whether he had submitted an end-of-the-year performance review in 2019 prior to his departure. **Mr. Lee confirmed that he submitted a positive review for Plaintiff, and that he recommended a merit increase for her.**

34. On or about August 7, 2020, Mr. Gassman and Chief HR Officer, John McMahon, held a virtual meeting with Plaintiff in which they set out new performance targets for Plaintiff. There, they indicated that they would follow up in a month to discuss whether their expectations were being met, and if not, whether they would have any additional suggestions as to improving performance. Given that these were newly established performance targets, Plaintiff was now approximately 20% over the spending budget that she was allocated to spend per every new customer acquired.

35. Defendant FRESHLY arbitrarily set these goals to illustrate that Plaintiff was mismanaging her budget.

36. Defendant's actions were intended to create a pretextual paper trail to justify Plaintiff's eventual termination.

37. On or about September 3, 2020, Mr. Gassman and Mr. McMahon held another virtual meeting with Plaintiff in which they advised Plaintiff that she was being terminated for purported "performance reasons" which they did not specific.

38. However, this was pretext. Plaintiff had not had any performance-related issues since the August 7, 2020 meeting. In fact, Plaintiff improved from being 20% over her budget to only 2% over her budget.

39. Defendant FRESHLY terminated Plaintiff in retaliation for her complaints of race discrimination.

40. Defendant FRESHLY would not have harassed or discriminated against Plaintiff but for her race.

41. As a result of Defendant FRESHLY's actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

42. As a result of Defendant FRESHLY's discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

43. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

44. As Defendant FRESHLY's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant FRESHLY.

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## <u>DISCRIMINATION</u>

39. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

40. This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practice of the above-named Defendants. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's a race [or] color.

41. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her race and color, together with creating a hostile work environment and unlawfully terminating Plaintiff.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## <u>RETALATION</u>

42. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

43. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

44. Defendant engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants,

8

specifically engaging in race-based disparate treatment of Plaintiff, as compared to her non-African American coworkers.

### AS A THIRD CAUSE OF ACTION
### UNDER FEDERAL LAW
### 42 U.S.C. 1981

45. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

46. 42 U.S.C. 1981 states in relevant part as follows:

> Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.
> "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

47. Plaintiff was discriminated against because of her race/color as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

48. Plaintiff also claims retaliation under 42 U.S.C. Section 1981.

### AS A FOURTH CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

49. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

50. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer…because of an individual's … race … sex… to refuse to hire or employ or

9

to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

51. Defendant FRESHLY engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her race, sex/gender, together with sexual harassment, creating a hostile work environment, and unlawful termination.

52. Plaintiff hereby makes a claim against Defendant FRESHLY under all of the applicable paragraphs of Executive Law Section 296.

### AS A FIFTH CAUSE OF ACTION
### UNDER STATE LAW
### RETALIATION

53. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before he has opposed any practices forbidden under this article."

55. Defendant FRESHLY engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of his opposition to Defendants' unlawful actions.

### AS A SIXTH CAUSE OF ACTION
### UNDER STATE LAW
### AIDING AND ABETTING

56. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

58. Defendant FRESHLY engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A SEVENTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### DISCRIMINATION

59. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

60. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived ... race ... gender ... of any person; [...] (2) to refuse to hire or employ or to bar or to discharge from employment such person; or (3) to discriminate against such person in compensation or in terms, conditions or privileges of employment."

61. Defendant FRESHLY engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of his race, sex/gender, together with sexual harassment, creating a hostile work environment, and unlawful termination.

## AS AN EIGTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>RETALIATION</u>

57. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

59. Defendant FRESHLY engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to terminating Plaintiff.

## AS A NINTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>AIDING & ABETTING</u>

60. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

62. Defendant FRESHLY engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant FRESHLY:

A. Declaring that Defendant FRESHLY engaged in unlawful employment practices prohibited by the 42 U.S.C. §2000e, 42 U.S.C. §1981, the New York State Executive Law, and the Administrative Code of the City of New York, and that Defendant FRESHLY discriminated against Plaintiff on the basis of her race, together with creating a hostile work environment, retaliation, and unlawful termination;

B. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to her reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all causes of action so triable.

To be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 7, 2022

                        ARCÉ LAW GROUP, P.C
                        *Attorneys for Plaintiff*

By: _____
       Jesse S. Weinstein, Esq.
       45 Broadway, Suite 430B
       New York, NY 10006
       (212) 248-0120